[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 6, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13398

_____

D. C. Docket No. 06-60889-CV-JIC

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Plaintiff-
Counter-Defendant-
Appellee,

versus

LAGO CANYON, INC.,

Defendant-
Counter-Claimant-
Third-PartyPlaintiff-
Appellant,

versus

H M Y YACHT SALES, INC.,
SUNSEEKER INTERNATIONAL LIMITED,

Third-Party Defendants,

SUNSEEKER FLORIDA, INC.,
TROPICAL MARINE AIR CONDITIONING, INC.,

Third-Party Defendants-
Appellees.

Appeal from the United States District Court
for the Southern District of Florida
_____

**(March 6, 2009)**

Before HULL, WILSON and HILL, Circuit Judges.

HULL, Circuit Judge:

Defendant-Appellant Lago Canyon, Inc. ("Lago Canyon") appeals the district court's entry of a final judgment in favor of Plaintiff-Appellee St. Paul Fire & Marine Insurance Company ("St. Paul"). Lago Canyon owns a yacht that partially sank at a dock while undergoing engine repairs, causing over $1.2 million in damages. Lago Canyon filed a damage claim under its marine insurance policy ("the Marine Policy") from St. Paul.

St. Paul filed a complaint for a declaratory judgment that the Marine Policy did not cover the damage because it was caused by a corroding part. Lago Canyon counterclaimed for breach of contract (i.e., the Marine Policy). After a three-day bench trial, the district court found that the "proximate cause of the damage was the failure of a hose barb which resulted from corrosion," that the Marine Policy excluded corrosion, and that "the loss is not covered by the [Marine] Policy unless a provable manufacturer's defect can be shown." The district court also found that

the manufacturer's "use of yellow brass [for the hose barb] knowing its exposure to saltwater created a condition likely to cause corrosion" but that this defect was not covered by the term "manufacturer's defect" in the Marine Policy.

Lago Canyon appeals, claiming the district court erred in: (1) applying admiralty law and striking Lago Canyon's demand for a jury trial; (2) concluding that the Marine Policy did not cover the damage to the yacht; and (3) not awarding Lago Canyon prejudgment interest on the towing charges. After review and oral argument, we affirm in part and reverse in part.

## I. THE MARINE POLICY AND PROCEDURAL HISTORY

Lago Canyon is the named insured under the "all risks" Marine Policy issued by St. Paul. The Marine Policy states that the Quay Marine Agreement, any endorsements or amendments thereto, and the declarations page constitute the coverage on the yacht. The Marine Policy has a property damage limit of $1.4 million, a property damage deductible of $7,500, and a personal property damage limit of $35,000.

The property damage coverage section of the Marine Policy provides that St. Paul "will pay for accidental direct physical loss of or damage to [the] yacht except as specifically stated or excluded in this policy." The parties agree that "accidental" loss or damage to the yacht covers fortuitous loss unless subject to an

3

exclusion. The coverage paragraph also states that if the loss is caused by a "provable manufacturer's defect," no deductible will apply.[1] The district court concluded that the Marine Policy indicates that a loss must be fortuitous to be covered and that a "manufacturer's defect" is an example of a covered, fortuitous loss where no deductible applies.[2]

The Marine Policy, however, expressly excludes loss or damage "caused by or resulting from . . . corrosion," as follows:

> **Exclusions:** <u>We will not provide Property Damage Coverage for any loss or damage caused by or resulting from</u> wear and tear, electrolysis, lack of maintenance, <u>corrosion</u>, deterioration, mold, or fiberglass blistering.

(Emphasis added). The commercial towing section of the Marine Policy covers reasonable costs, up to $7,500, to tow the yacht if it is "disabled from a cause other

---

[1]The property damage coverage section of the Marine Policy provides:
**Coverage Provided:** We will pay for accidental direct physical loss or damage to your yacht except as specifically stated or excluded in the policy. . . . If the loss or damage is caused by a provable manufacturer's defect, caused by fire not originating from your yacht, or results from a collision caused by another vessel, no deductible will apply.

[2]In its earlier summary judgment order, the district court concluded that "if there is a provable manufacturer's defect then no deductible will apply thus giving rise to the inference that a provable manufacturer's defect is covered by the policy." In this appeal, St. Paul does not dispute that loss caused by a "manufacturer's defect" is an example of a covered loss. However, as discussed later, the parties hotly dispute what is encompassed within the term "manufacturer's defect" in the Marine Policy.

than a covered loss."[3]

St. Paul issued a Reservation of Rights advising Lago that its loss might not be covered. St. Paul then filed a declaratory judgment action based on admiralty jurisdiction under 28 U.S.C. § 1333(1).[4] St. Paul's complaint alleged, "[T]his action concerns a policy of marine insurance on a vessel, which is deemed a maritime contract, giving rise to admiralty and maritime jurisdiction." It is well settled that cases involving marine contracts give rise to admiralty jurisdiction. See, e.g., Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23, 125 S. Ct. 385, 392-93 (2004). St. Paul's complaint also invoked Rule 9(h) of the Federal Rules of Civil Procedure, which allows plaintiffs to elect admiralty jurisdiction over "some other ground" of federal jurisdiction.[5] In other words, if there are two grounds for

---

[3]The commercial towing section of the Marine Policy provides:
We will pay up to the amount of Commercial Towing / Emergency Services coverage shown on the Declarations Page for the following reasonable costs you incur if your yacht is disabled from a cause other than a covered loss:
     1. towing to the nearest facility where proper repairs can be made.
     2. emergency labor at the breakdown site.
     3. the delivery of fuel, oil, battery or repair parts (excluding payment for the cost of these items).
     4. tender trailer road service.

[4]28 U.S.C. § 1333(1) provides:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

[5]Rule 9(h) currently provides:
(h) Admiralty or Maritime Claim.
     (1) How Designated. If a claim for relief is within the admiralty or maritime jurisdiction and also within the courts' subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and

5

jurisdiction in the same case—such as admiralty and diversity jurisdiction—Rule

9(h) provides that the plaintiff may elect to proceed in admiralty.

Lago Canyon counterclaimed that St. Paul had breached its contract (i.e., the

Marine Policy) by refusing to pay the damages to the yacht and demanded

prejudgment interest. Lago Canyon's counterclaim is the flip side of St. Paul's

own claim. Lago Canyon asserts its loss is covered by the Marine Policy, and St.

Paul asserts no coverage. Thus, both parties make claims under the same maritime

insurance contract. Lago Canyon's counterclaim also alleged that the action was

between citizens of different states and the amount in controversy exceeded

$75,000. Lago Canyon separately demanded a jury trial.

St. Paul then moved to strike Lago Canyon's demand for a jury trial. Based

on our precedent in Harrison v. Flota Mercante Grancolombia, S.A., 577 F.2d 968

(5th Cir. 1978),[6] the district court granted St. Paul's motion and struck Lago

Canyon's jury demand. The district court noted that "[t]he issue before the Court

is whether St. Paul's election to bring this case in admiralty precludes Lago

82 and the Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions. A claim cognizable only in the admiralty or
maritime jurisdiction is an admiralty or maritime claim for those purposes,
whether or not so designated.
(2) Designation for Appeal. A case that includes an admiralty or maritime
claim within this subdivision (h) is an admiralty case within 28 U.S.C. §
1292(a)(3).

Fed. R. Civ. P. 9(h) (2006).

[6]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1,
1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

6

[Canyon] from demanding a jury trial on its related state common law counterclaim." The district court concluded that St. Paul's Rule 9(h) designation of its marine insurance claim as an admiralty claim trumped Lago Canyon's jury-trial right on its breach-of-contract counterclaim where Lago Canyon's counterclaim arose out of the same operative facts and same Marine Policy as St. Paul's claim. The district court recognized that there was a split of authority on this issue but concluded the binding precedent in Harrison required that both claims be tried by the court.[7]

After a three-day bench trial, the district court declared that St. Paul's Marine Policy did not cover Lago Canyon's damage and granted final judgment in favor of St. Paul. First, the district court found that: (1) the hose barb failed and caused the water intrusion, sinking, and damage; (2) there was "[c]lear and convincing evidence that the proximate cause of the loss was the failure of the hose barb which resulted from corrosion"; (3) "both experts determined that the hose barb failed because of corrosion, albeit they each found a different type of corrosive process was present"[8]; and (4) "[t]he use of yellow brass knowing its exposure to saltwater created a condition likely to cause corrosion."

---

[7]See infra note 14 (detailing circuit split).

[8]The district court noted that St. Paul's expert, David Wills, testified that the hose barb failed primarily due to galvanic corrosion, and a second type of corrosion, dezincification corrosion, also contributed. Lago Canyon's expert, Frank Grate, testified that the hose barb failed due to dezincification, which is a subclassification of "parting" corrosion.

The district court acknowledged that the Marine Policy covered loss caused by a "manufacturer's defect." Because the Marine Policy explicitly excludes damage "caused by or resulting from corrosion," the district court determined that "the loss is not covered by the [Marine] Policy unless a provable manufacturer's defect can be shown."

The district court treated the term "manufacturer's defect" in the Marine Policy as meaning a "manufacturing defect" and then distinguished between a "manufacturing" defect, a problem in the manufacturing process, and a design defect, a problem with the design of the product. The district court concluded that only manufacturing defects, not design defects, were covered by the Marine Policy. As to manufacturing defects, the district court found that Lago Canyon "failed to submit any evidence to establish that the hose barb deviated from the manufacturer's own design, standards or specifications, or establish that something went wrong during the manufacturing process."

The district court ordered St. Paul to pay a $7,500 towing fee to Lago Canyon because the Marine Policy covered towing fees if the yacht was disabled from a cause other than a covered loss. Lago Canyon incurred a towing fee of $18,500.[9] The district court's order did not mention prejudgment interest.

## II. BENCH VS. JURY TRIAL

---

[9]Lago Canyon paid the entire $18,500 towing fee itself when St. Paul refused pay.

8

On appeal, Lago Canyon claims that the district court erred in striking its jury demand. We first review our Harrison precedent, which the district court applied as controlling on the admiralty and jury trial issue.[10]

## A. Our Harrison Precedent

In Harrison, the plaintiff was a longshoreman who came into contact with liquid chemical isobutyl acrylate (IBA) while cleaning up a spill on a ship. 577 F.2d at 972. The plaintiff's condition steadily deteriorated until he was left totally disabled. Id. The plaintiff sued the vessel's owner, alleging negligence and unseaworthiness. Id. at 973. The plaintiff designated his claim as one "within the admiralty jurisdiction of this Honorable Court as that term is defined by Section 9(h)."[11] Id.

_____

[10]The issue of whether the district court erred in striking Lago Canyon's jury claim presents a legal question, which we review de novo. Otero v. United States, 499 F.3d 1267, 1269 (11th Cir. 2007).

[11]At the time of Harrison, Rule 9(h) stated, in relevant part:
Admiralty and maritime claims. A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. The reference in Title 28 U.S.C. § 1292(a)(3) to admiralty cases shall be construed to mean admiralty and maritime claims within the meaning of this subdivision (h).
Since Harrison, the form (but not the substance) of Rule 9(h) has been amended slightly. In any event, there is no question that St. Paul had the right to invoke the court's admiralty jurisdiction as to the Marine Policy. The only question is whether this precluded Lago Canyon from invoking diversity jurisdiction and obtaining a jury trial.

9

The defendant vessel-owner then impleaded the plaintiff's employer,

alleging that any unseaworthiness of the vessel was due to the employer's

negligence. Id. The employer, in turn, filed a fourth-party complaint against the

shipper of the IBA, seeking indemnification based upon products liability and

negligent failure to warn of the dangerous propensities of IBA. Id. The defendant

vessel-owner then asserted a claim against the shipper. Id. The plaintiff amended

his complaint to state a claim against the fourth-party defendant shipper, alleging

products liability and negligent failure to warn, and the plaintiff again specified in

his pleading that the action was within the court's admiralty jurisdiction under

Rule 9(h). Id. After a bench trial, the trial court awarded a $246,695.66 judgment

for the plaintiff solely against the fourth-party defendant, the shipper of the IBA.

Id.

The fourth-party defendant shipper of the IBA appealed, arguing, inter alia,

that it was deprived of its right to trial by jury. Id. The shipper emphasized that

the actions against it were predicated on negligence and products liability and, as

such, fell within the diversity jurisdiction of the district court.[12] Id.

This Court concluded that the district court did not err in denying the

_____

[12]The shipper also argued it should be granted a jury trial because the fourth-party complaint cited Federal Rule of Civil Procedure 14(a) (the general indemnity provision) rather than Rule 14(c) (the admiralty indemnity provision) as the basis for the indemnity action against the shipper. Harrison, 577 F.2d at 973. This Court rejected this argument, refusing to permit a third-party defendant to emasculate the election given to the plaintiff by Rule 9(h) by exercising the simple expedient of bringing in a fourth-party defendant. Id. at 987.

shipper's demand for a jury trial.  Id. at 974.  First, we explained the history of

Rule 9(h) and how it preserves a non-jury trial when cases involve both admiralty

and some other basis for jurisdiction, as follows:

> The unification of the admiralty and civil rules in 1966 was intended
> to work no change in the general rule that admiralty claims are to be
> tried without a jury.  Fed. R. Civ. P. 9(h) serves only as a device by
> which the pleader may claim the special benefits of admiralty
> procedures and remedies, including a non-jury trial, when the
> pleadings show that both admiralty and some other basis of federal
> jurisdiction exist.

Id. at 986 (quotation marks and citations omitted).  We explained that, in such dual

jurisdiction cases, the plaintiff may elect to proceed in admiralty under Rule 9(h),

rather than under diversity jurisdiction, and thereby preclude a defendant from

exercising his right to trial by jury.[13]  Id.  We noted that the Advisory Committee's

Notes to Rule 9(h) support this conclusion, and quoted those Notes as follows:

> "Many claims, however, are cognizable by the district courts whether
> asserted in admiralty or in a civil action, assuming the existence of a
> nonmaritime ground of jurisdiction. Thus at present the pleader has
> (the) power to determine procedural consequences by the way in
> which he exercises the classic privilege given by the saving-to-suitors
> clause (28 U.S.C. § 1333) or by equivalent statutory provisions. . . .
> One of the important procedural consequences is that in the civil
> action either party may demand a jury trial, while in the suit in
> admiralty there is no right to jury trial except as provided by statute. . .

---

[13]Under the savings-to-suitors clause, a plaintiff in a maritime case alleging an in personam claim has three options: (1) the plaintiff may file suit in federal court under admiralty jurisdiction (which occurred in Harrison and here); (2) the plaintiff may file suit in federal court under diversity jurisdiction; or (3) the plaintiff may file suit in state court.  See Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 360, 82 S. Ct. 780, 783-84 (1962); Madruga v. Superior Court of State of Cal. in and for San Diego County, 346 U.S. 556, 560-61, 74 S. Ct. 298, 300-01 (1954); In re Chimenti, 79 F.3d 534, 537 (6th Cir. 1996).

11

. The unified rules must therefore provide some device for preserving the present power of the pleader to determine whether these historically maritime procedures shall be applicable to his claim or not; the pleader must be afforded some means of designating his claim as the counterpart of the present suit in admiralty, where its character as such is not clear. . . . Other methods of solving the problem were carefully explored, but the Advisory Committee concluded that the preferable solution is to allow the pleader who now has power to determine procedural consequences by filing a suit in admiralty to exercise that power under unification, for the limited instances in which procedural differences will remain, by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim."

Id. at 986-87 (quoting Fed. R. Civ. P. 9(h), Advisory Committee Note, 39 F.R.D. 69, 75-76 (1966)).

This Court also noted that "the fourth-party complaint is based upon the same set of operative facts which gave rise to the first complaint." Id. at 987. We added, "[t]hat is, the facts which established admiralty jurisdiction for the plaintiff's original claim, injury upon navigable waters performing a task traditionally performed by seamen, also form[ed] the basis for the fourth-party action [by the plaintiff against the IBA shipper]." Id. We then determined that "the plaintiff has specifically elected to pursue a non-jury admiralty claim pursuant to Rule 9(h)" and that the trial court correctly denied the shipper's demand for a jury trial. Id. at 988. We noted that the plaintiff, in amending his complaint to include a claim against the shipper, specified that he was bringing the claim under Rule 9(h). Id.

12

**B. Lago Canyon's Jury Demand**

In this admiralty-Rule 9(h) case, the district court was, as we are, bound by Harrison and thus did not err in striking Lago Canyon's demand for a jury trial. St. Paul's declaratory judgment complaint as to its Marine Policy claimed the special benefits of admiralty procedures, including a non-jury trial, by setting forth why admiralty jurisdiction existed and by designating this action under Rule 9(h) as one brought within that admiralty jurisdiction.[14] Indeed, Rule 9(h) expressly authorizes St. Paul to elect to proceed in admiralty rather than "some other ground" of jurisdiction, such as diversity. Fed. R. Civ. P. 9(h). As explained by the Advisory Committee Notes to Rule 9(h) quoted in Harrison, this accords with the longstanding tradition in admiralty proceedings that the pleader has the right to determine procedural consequences (including the right to a jury trial) by a simple statement in his pleading that the claim is an admiralty claim. Fed. R. Civ. P. 9(h), Advisory Committee Note, 39 F.R.D. 69, 75-76 (1966).

Lago Canyon contends that Harrison should not apply because St. Paul brought a declaratory judgment action, whereas the plaintiff in Harrison brought a suit for damages. Lago Canyon argues that the Supreme Court's decision in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S. Ct. 948 (1959), requires a different result from that reached in 1978 in Harrison. St. Paul counters that: (1)

---

[14]St. Paul's complaint did not allege diversity as an alternative basis of jurisdiction.

13

Beacon Theatres, while involving a suit for declaratory relief, was not an admiralty case, but an antitrust case under the Sherman Antitrust Act where the Seventh Amendment right to a jury trial controlled; (2) Rule 9(h) was not at issue; and (3) there is no Seventh Amendment right to a jury trial on maritime claims.

The problem for Lago Canyon is that Harrison in no way depended on the fact that the plaintiff filed a complaint for damages instead of a declaratory judgment against a defendant. Rather, Harrison addressed what happens when both admiralty and some other ground of federal jurisdiction exist in the same case and the plaintiff invokes admiralty jurisdiction under Rule 9(h). 577 F.2d at 986-88. This Court stated in Harrison that, in admiralty cases, "by electing to proceed under Rule 9(h), rather than by invoking diversity jurisdiction, the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist." Id. at 986. That is what happened here, which makes Harrison in point. Thus, our prior panel precedent rule requires us to follow Harrison.[15] See

---

[15]Both parties acknowledge that courts are divided on the question of whether a plaintiff's Rule 9(h) admiralty designation prevents a defendant from obtaining a jury trial. Compare Harrison, 577 F.2d 968, and Windsor Mount Joy Mut. Ins. Co. v. Johnson, 264 F. Supp. 2d 158, 162 (D.N.J. 2003) (concluding that plaintiff's Rule 9(h) election to proceed in admiralty jurisdiction could not be "undone . . . through the assertion of a counterclaim that might have been subject to the Court's jurisdiction under Section 1332 and a jury trial if brought in a separate action"), and Camrex (Holdings) Ltd. v. Camrex Reliance Paint Co., 90 F.R.D. 313, 317 (E.D.N.Y. 1981) (concluding that a "plaintiff's election to sue on an admiralty or maritime claim as the basis for federal jurisdiction binds the parties in the lawsuit to the inevitable procedural consequence of a court trial, . . . even where a 'legal' counterclaim has been interposed" (citation omitted)), with Wilmington Trust v. U.S. Dist. Court, 934 F.2d 1026, 1032 (9th Cir. 1991) (concluding that the plaintiff's "election to proceed in admiralty does not deprive the Union of a jury trial on the Union's properly joined [counter]claims"), and In re Lockheed Martin Corp., 503 F.3d 351, 358 (4th Cir. 2007) (concluding that defendant-insured Lockheed

14

Saxton v. ACF Indus., Inc., 239 F.3d 1209, 1214 (11th Cir. 2001) ("[U]nder this Circuit's prior panel precedent rule, we are bound by the holding of the first panel of this Court to address an issue of law, unless and until that holding is overruled en banc or by the Supreme Court."); Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076 (11th Cir. 2000) ("[T]he prior panel precedent rule is not dependent upon a subsequent panel's appraisal of the initial decision's correctness. Nor is the operation of the rule dependent upon the skill of the attorneys or wisdom of the judges involved with the prior decision—upon what was argued or considered.").

Accordingly, under our prior panel precedent rule, we affirm the district court's order striking Lago Canyon's demand for a jury trial.[16]

## III. MANUFACTURER'S DEFECT

On appeal, Lago Canyon asserts that the manufacturer's choice of yellow brass for the hose barb was a manufacturer's design defect which resulted in the corrosion and that the district court erred in concluding that the term

---

was entitled to a jury trial on its ship-damage claim under the savings-to-suitors clause against plaintiff-insurer and stating that although plaintiff-insurer brought declaratory judgment action first and designated its claim as one in admiralty, Beacon Theatres requires courts to ignore plaintiff's declaratory judgment action and look to how action would have proceeded otherwise), cert. denied, 128 S. Ct. 2080 (2008).

[16]Lago Canyon also claims that St. Paul delayed service of its complaint in an attempt to manipulate the district court's decision to proceed without a jury. Lago Canyon asserts that it was mailed a copy of the complaint over two months after the suit was filed. However, there is no evidence to suggest that St. Paul engaged in any abusive tactics in filing its complaint before Lago Canyon filed its own. Lago Canyon was put on notice of a coverage dispute by St. Paul's Reservation of Rights sent on April 6, 2006. Lago Canyon could have brought its own action at this time. St. Paul did not file its complaint until June 20, 2006.

"manufacturer's defect" in the Marine Policy did not cover design defects. More specifically, Lago Canyon emphasizes that its trial evidence showed that: (1) the hose barb corroded because it was made of yellow brass; (2) yellow brass was a material unsuitable for a part exposed to salt water; and (3) the use of yellow brass constituted a design defect by the manufacturer.[17] In other words, Lago Canyon contends that the manufacturer's design defect caused the hose barb failure and ultimate water intrusion.

At trial, St. Paul responded that: (1) yellow brass fittings in vessels, such as this hose barb, provide many years of service but must be properly maintained; (2) the corrosion process here took approximately seven years; (3) wear and tear is a natural part of the service life of a material; (4) Lago Canyon failed to maintain and inspect the hose barb; and (5) in any event, the manufacturer's choice of yellow brass for its product is a design defect, not a manufacturing defect, and not covered by the Marine Policy.[18]

---

[17]We review a district court's interpretation of a contract de novo. Ohio Cas. Ins. Co. v. Holcim (US), Inc., 548 F.3d 1352, 1356 (11th Cir. 2008).

[18]Courts and the Restatement of Torts distinguish between design defects and manufacturing defects. See, e.g., Harduvel v. Gen. Dynamics Corp., 878 F.2d 1311, 1317 (11th Cir. 1989) ("This distinction between 'aberrational defects' and defects occurring throughout an entire line of products is frequently used in tort law to separate defects of manufacture from those of design. . . . Stated another way, the distinction is between an unintended configuration, and an intended configuration that may produce unintended and unwanted results."); In re Tempomandibular Joint Implants Liab. Litig., 97 F.3d 1050, 1056 (8th Cir. 1996) (concluding that a manufacturer's use of "what proved to be an unsuitable material" for jaw implants is "clearly" a design defect for which the manufacturer should be liable); Restatement (Third) of Torts § 2 (1998) (setting forth different standards of liability for manufacturing and design defects).

16

The district court found that: (1) Sunseeker International Ltd. was the manufacturer of the yacht and "[t]he failed hose barb was an original part of the vessel installed by the manufacturer"; (2) the failed hose barb was made of yellow brass; and (3) "[t]he use of yellow brass knowing its exposure to saltwater created a condition likely to cause corrosion." However, even if yellow brass was an improper material choice, the district court concluded that (1) the Marine Policy covered only "manufacturing defects" and (2) the use of yellow brass did not constitute a manufacturing defect covered by the Marine Policy. As noted earlier, the district court found that there was no evidence that something went wrong in the manufacturing process or that "the hose barb deviated from its intended design."

On appeal, Lago Canyon acknowledges that a design defect is different from a defect in the manufacturing process. Lago Canyon, however, points out that a manufacturer may be liable for both design defects and defects in the manufacturing process. Lago Canyon argues that the term "manufacturer's defect," as used in the Marine Policy, means any defect attributable to the manufacturer and is not limited in any way. Lago Canyon thus claims that the term "manufacturer's defect" includes both design and manufacturing defects. Lago Canyon argues that the district court's order jumped from "manufactur<u>er's</u> defect" to "manufactur<u>ing</u> defect" and erred in equating "manufacturer's defect," as used

17

in the Marine Policy, with "manufacturing defect."

We agree with Lago Canyon that the district court erred in construing the term "manufacturer's defect" in the Marine Policy. The Marine Policy does not define the term "manufacturer's defect." Although there is a distinct difference between a manufacturing defect and a design defect, manufacturers may be liable for both types of defects. See Jennings v. BIC Corp., 181 F.3d 1250, 1255 (11th Cir. 1999) (explaining that Florida has adopted the Restatement (Second) of Torts § 402(A), under which a manufacturer may be held liable for a design defect, a manufacturing defect, or an inadequate warning). Thus, both are manufacturer's defects. St. Paul's problem is that its Marine Policy uses the broad term "manufacturer's defect" and not "manufacturing defect" as focused on by the district court. Attempting to give the term "manufacturer's defect" its plain meaning and mindful of the settled rule that ambiguous provisions in an insurance policy are construed against the insurer, we conclude the term "manufacturer's defect" includes defects attributable to the manufacturer whether in the manufacturer's design or manufacturing of the product.[19] Thus, the district court

_____

[19]Under both Florida law and federal maritime law, an ambiguous provision in a maritime contract is interpreted against the drafter. See, e.g., Edward Leasing Corp., 785 F.2d at 889 ("The traditional rule of construction in admiralty cases is to construe the contract language most strongly against the drafter . . . ."); Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003) ("An ambiguous provision is construed in favor of the insured and strictly against the drafter."). Because there is no conflict between state law and maritime law on this issue, we need not engage in the balancing test for determining which law applies when a conflict exists. See Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485, 1488 (11th Cir. 1986).

18

erred in its legal interpretation of that term.[20]

Because the district court interpreted the Marine Policy not to cover a manufacturer's design defect, the district court did not make findings as to other issues in the case. For example, although the district court found that "[t]he use of yellow brass knowing its exposure to saltwater created a condition likely to cause corrosion," it did not determine whether the use of yellow brass rose to the level of a manufacturer's design defect and, if so, what impact this had on the multiple causation issues in the case and the court's other fact findings. While the district court found that "the proximate cause of the damage was the failure of a hose barb which resulted from corrosion" and corrosion was excluded, the district court also then found that "the loss is not covered by the [Marine] Policy unless a provable manufacturer's defect can be shown." Because it concluded that a design defect was not a "manufacturer's defect," the district court did not address further the interplay between the manufacturer's defect coverage and the corrosion exclusion or what impact such a design defect had on its causation findings. Therefore, because our ruling triggers the need for the district court to address other issues in

---

[20]The parties do not cite, nor can we find, any case addressing the meaning of the term "manufacturer's defect" in a marine insurance policy or any other insurance policy for that matter. Rather, Lago Canyon cites primarily Florida cases for the proposition that a manufacturer can be held liable for both manufacturing and design defects in the manufacturer's product. St. Paul cites primarily Florida cases for the proposition that a defect in the manufacturing process or a so-called "manufacturing defect" is different from a manufacturer's design defect. However, neither of those propositions address, much less resolve, the issue of what is meant by the undefined term "manufacturer's defect" in a marine insurance policy drafted by the insurer. We say this to explain the paucity of case law in our analysis.

the first instance and because this is such a fact intensive case, we remand this case to the district court for further bench trial proceedings consistent with this Court's ruling as to the "manufacturer's defect" issue.[21]

## B. Prejudgment Interest

Lastly, we turn to Lago Canyon's contention that the district court erred in not awarding Lago Canyon prejudgment interest.[22] "As a general rule, pre-judgment interest should be awarded in admiralty cases. Pre-judgment interest is not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his." Ins. Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 942 (11th Cir. 1990). A district court has discretion to deny prejudgment interest when there are "peculiar circumstances" that make it inequitable for the losing party to pay prejudgment interest. Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540, 1550 (11th Cir. 1987). "[I]n any admiralty case in which the trial court refuses to award prejudgment interest, the best practice would be for it to detail the peculiar circumstance it has found, and specifically indicate that it is denying prejudgment interest as an exercise of the discretion created by the existence of peculiar circumstances. In the absence of clear findings by the district court, an appellate

---

[21]On appeal, Lago Canyon argues that, but for the design defect, the loss would not have occurred. We expressly do not reach any of the factual or legal causation issues on appeal as we need the district court to rule on the design defect issue first.

[22]We review a district court's decision not to award prejudgment interest for abuse of discretion. See Ins. Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 942 (11th Cir. 1990).

20

court could search the record for 'peculiar circumstances' and decide to award or deny prejudgment interest without a remand." Id. at 1550-51.

Here, we not only have no clear finding of "peculiar circumstances," but also no finding or mention at all of prejudgment interest. The district court's order does not deny or grant prejudgment interest. It says nothing about it. Thus, we remand the issue of prejudgment interest to the district court to address in the first instance.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's rulings except as to the issue of the "manufacturer's defect" and prejudgment interest on the towing charges. Because of the fact intensive nature of this case, we vacate the judgment in favor of St. Paul and remand the case to the district court for further bench trial proceedings as to the alleged "manufacturer's defect" and prejudgment interest issues. We do not mean the district court must hear all the evidence again, but only that the parties should be able to supplement the record before the district court rules on the remaining issues.

**AFFIRMED, IN PART; VACATED AND REMANDED, IN PART.**

21

WILSON, Circuit Judge, concurring:

I concur in the Court's opinion but, as to section II, I have doubts about the correctness of our prior precedent in *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968 (5th Cir. 1978).[1]  Relying on *Harrison*, the district court struck Lago's demand for a jury trial, reasoning that because "St. Paul elected to file this claim pursuant to Rule 9(h) and Lago's counter-claim arises out of the same operative facts as St. Paul's claims, both claims must be tried by [the district court], not by a jury."  Accordingly, St. Paul was successfully able to defeat Lago's right to a jury trial by invoking Rule 9(h), and designating its declaratory judgment action as one preceding in admiralty jurisdiction.  But for *Harrison*, I believe that the nature of a declaratory judgment action requires a different result with regard to Lago's demand for a jury trial on its breach of contract counterclaim.

We are bound by our prior panel precedent in *Harrison*.  In *Harrison*, Grover Harrison, a longshoreman, suffered injuries stemming from an incident aboard a freighter when barrels containing an industrial chemical fell and leaked in the hold and Harrison offered assistance as part of the clean-up crew.  Harrison sued Flota Mercante Grancolombiana, S.A. ("Flota Mercante"), the owner of the vessel, alleging negligence and unseaworthiness.  Harrison invoked admiralty jurisdiction pursuant to Rule 9(h).  Flota Mercante, in turn, impleaded Harrison's

---

[1] In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the newly-formed Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

employer, James J. Flanagan Stevedores ("Stevedores"), "alleging that the unseaworthiness of the vessel, if any, was due to the employer's negligence." *Harrison*, 577 F.2d at 973. Stevedores, in turn, filed a fourth-party complaint against Rohm and Haas Company, the shipper of the industrial chemical, seeking indemnification based on product liability and negligent failure to warn. Flota Mercante, as the vessel owner, also filed a claim against Rohm and Haas.[2] Following the lead of both the vessel owner and his employer, Harrison amended his complaint to state a claim against Rohm and Haas, alleging product liability and negligent failure to warn. Once again, Harrison invoked admiralty jurisdiction pursuant to Rule 9(h).

The district court found against Rohm and Haas, only. Rohm and Haas appealed, arguing, *inter alia*, that the district court deprived it of the right to trial by jury. In support, Rohm and Haas asserted two arguments: (1) Stevedores' third-party complaint against it cited Rule 14(a), not Rule 14(c), as the basis for its indemnity claim;[3] and (2) the claims against it (negligence and product liability) may fall within the district court's diversity jurisdiction. *Id.* at 985-86. Therefore, notwithstanding the plaintiff's invocation of Rule 9(h), Rohm and Haas argued, it was entitled to a trial by jury.

---

[2] The Fifth Circuit did not specify the nature of Flota Mercante's claim against Rohm and Haas.

[3] Rule 14(a) addresses third-party practice generally and Rule 14(c) addresses third-party practice specifically in an admiralty or maritime claim. *See* FED. R. CIV. P. 14.

The Fifth Circuit disagreed, explaining that "by electing to proceed under 9(h) rather than by invoking diversity jurisdiction, the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist." *Id.* at 986. The *Harrison* Court found the plaintiff's election under Rule 9(h) "dispositive" as to whether Rohm and Haas was entitled to a jury trial. *Id.* at 986. The Fifth Circuit then highlighted the fact that Harrison "elected to proceed against both the vessel [Flota Mercante] and the shipper, Rohm and Haas, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, with the attendant right to a non-jury trial." *Id.* at 987. The Fifth Circuit found that the Stevedores' invocation of Rule 14(a), as opposed to Rule 14(c), was "of no consequence" for three reasons. *Id.* First, the court "refuse[d] to permit a third-party defendant [Stevedores] to emasculate the election given to the plaintiff by Rule 9(h) by exercising the simple expedient of bringing in a fourth-party defendant [Rohm and Haas]." *Id.* Second, Harrison's claims against Flota Mercante (first complaint) and Rohm and Haas (fourth-party complaint) stem from the same set of operative facts. *Id.* Third, Harrison amended his complaint to state a claim against Rohm and Haas and, in doing so, invoked Rule 9(h). *Id.* In conclusion, because Harrison elected to pursue an admiralty claim pursuant to Rule 9(h), the Fifth Circuit concluded that the district court did not err in denying Rohm and Haas a jury trial.

Here, we conclude that "our prior precedent rule requires us to follow

*Harrison*." Majority Op. at 14. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (per curiam) ("Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court.") (citation and internal quotation marks omitted). Specifically, we rely on the following passage: "by electing to proceed under Rule 9(h), rather than by invoking diversity jurisdiction, the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist." Majority Op. at 14 (citing *Harrison*, 577 F.2d at 986).

Although we are bound by the Fifth Circuit's analysis, I believe that the Fourth Circuit sets forth a more persuasive analysis. In *In re Lockheed Martin Corporation*, 503 F.3d 351 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 2080 (2008), a case indistinguishable from this case on its facts, the Fourth Circuit addressed "the right to a trial by jury in an admiralty case." 503 F.3d at 352. There, Lockheed Martin's ("Lockheed") ship suffered damages at sea and a dispute regarding coverage arose between Lockheed and its insurer, National Casualty Company ("National"). National filed a declaratory judgment action against Lockheed, seeking a declaration that Lockheed's claims were time barred.[4] National designated its claim as one in admiralty. Lockheed answered and filed a counterclaim, seeking payments for the damages to the ship. Lockheed requested a

---

[4] National later amended its complaint, alternatively seeking a declaration of Lockheed's amount of loss.

25

jury trial, which the district court subsequently struck.  Lockheed petitioned the

Fourth Circuit for a writ of mandamus.  The Fourth Circuit issued the writ and said

that "[a]n admiralty plaintiff who chooses to proceed 'at law,' . . . has the right

under the saving-to-suitors clause to demand a jury trial."  *Id*. at 355.[5]  Lockheed

presented two arguments:  (1) because it asserted an *in personam* counterclaim

---

[5] Section 1333 of Title 28, known as the savings-to-suitors clause, sets forth the basis for admiralty jurisdiction:  "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  28 U.S.C. § 1333(1). Stated differently, the saving to suitors clause establishes the right of a party to choose whether to proceed within a court's admiralty jurisdiction or general civil jurisdiction when both admiralty and non-admiralty federal jurisdiction exist.  *See Waring v. Clarke*, 46 U.S. (5 How) 441, 461 (1847) (describing the "saving to suitors" clause to mean "that in cases of concurrent jurisdiction in admiralty and common law, the jurisdiction in the latter is not taken away"); *Harrison*, 577 F.2d at 986.  The Sixth Circuit has explained distinctly the meaning of the savings-to-suitors clause:

> First, the claimant may invoke federal admiralty jurisdiction under the grant of original subject matter jurisdiction over admiralty, maritime, and prize cases set out in Section 1333.  Neither diversity of citizenship nor a minimum amount in controversy need be shown under the statute.  On the other hand, most plaintiffs have no right to a trial by jury if they invoke the federal court's general admiralty jurisdiction.  Second, by virtue of the 'saving clause,' plaintiff also may sue at law in a state court or in a United States district court. However, to pursue the latter choice, the requirements of diversity of citizenship and jurisdictional amount must be satisfied.

*In re: Chimenti*, 79 F.3d 534, 537 (6th Cir. 1996) (citation omitted).  The Supreme Court, however, has limited the scope of the savings-to-suitors clause, drawing a distinction between an *in rem* claim and an *in personam* claim:  "[w]here the suit is in personam, it may be brought either in admiralty or, under the saving clause, in an appropriate non-maritime court, by ordinary civil action."  *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 360 (1962) (citation and quotation marks omitted); s*ee also Madruga v. Superior Court of State of Cal. in and for San Diego County*, 346 U.S. 556, 560-561 (1954) (interpreting the savings-to-suitors clause to mean that the common law is "competent" to adjudicate cases proceeding *in personam*, where the defendant is a person, but not proceedings *in rem*).  As such, the savings-to-suitors clause provides a plaintiff in a maritime case alleging an *in personam* claim with three options:  (1) the plaintiff may file suit in federal court under admiralty jurisdiction; (2) the plaintiff may file suit in federal court under diversity jurisdiction; or (3) the plaintiff may file suit in state court.

against National meeting the requirements of diversity jurisdiction, "it has the right under the saving-to-suitors clause to demand a jury trial on the counterclaim;" and (2) it had the right to a jury trial under *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500 (1959), "in which the Supreme Court held that the right to a jury trial in a declaratory judgment action depends on whether there would have been a right to a jury trial had the action proceeded without the declaratory judgment vehicle." *Lockheed Martin*, 503 F.3d at 355. The Fourth Circuit declined to consider the merits of the first argument but agreed with Lockheed as to its second argument.[6]

Having determined that the Seventh Amendment applies to admiralty claims tried "at law" by way of the savings-to-suitors clause, the Fourth Circuit recognized that National decided to proceed in admiralty, not at law. Given the nature of a declaratory judgment action, the Fourth Circuit found National's admiralty designation under Rule 9(h) not to be dispositive of the right to a jury

---

[6] In fact, the Fourth Circuit explained that its holding did not rest on Lockheed's counterclaim, but on the procedural posture of that case as a declaratory judgment action:

> We agree with National that permitting such counterclaims to effectively undo the plaintiff's Rule 9(h) designation would be inconsistent with the historic admiralty practice of giving the plaintiff the power to determine the manner in which his claims would be tried. We need not decide, however, whether the counterclaims asserted by Lockheed are 'true' counterclaims, nor need we decide how a defendant's jury demand would be resolved if his counterclaims were not true counterclaims. We need not consider these issues because we agree with Lockheed that *Beacon Theatres* requires a jury trial in this case, *even if no counterclaims had been filed*.

*Lockheed Martin*, 503 F.3d at 358 (emphasis added).

27

trial issue:

> This case, like *Beacon Theatres*, involves a declaratory judgment action commenced by the party that, but for the existence of the declaratory judgment procedure, would have been the defendant. Although the action sounds in admiralty, that is only because National won the race to the courthouse door and made the Rule 9(h) designation first. *Beacon Theatres*, however, requires us to ignore National's status as the declaratory judgment plaintiff and to instead look to how the action otherwise would have proceeded. Without the declaratory judgment vehicle, Lockheed would have sued National for breach of the insurance policy, a claim over which admiralty and "law" courts have concurrent jurisdiction. As the plaintiff, Lockheed would have been entitled under the saving-to-suitors clause to designate its claim as a legal one as to which there is a Seventh Amendment right to jury trial.

*Id.* at 359. The Fourth Circuit's conclusion rested on two points: (1) "[i]n the usual course of events-that is, without the declaratory judgment vehicle-Lockheed would have sued National for breach of the insurance contract;" and (2) "under the saving-to-suitors clause, Lockheed would have been entitled to a jury trial on that claim." *Id.* at 359-60. Accordingly, "Lockheed cannot lose its right to a jury trial simply because National initiated the declaratory judgment action." *Id*. at 360.

This case stands on all fours with *Lockheed Martin*. The facts are indistinguishable: insurer sues insured for declaratory judgment that insurance policy does not provide coverage; insurer invokes Rule 9(h); and, insured files a counterclaim for breach of insurance contract, pleads diversity jurisdiction, and

demands a jury trial. Similarly to *Lockheed Martin*, two points lead me to conclude that Lago was entitled to a jury trial on its breach of contract claim: (1) Lago would have been entitled to a jury trial on its breach of contract counterclaim pursuant to the "saving to suitors" clause; and (2) the unique nature of a declaratory judgment action.

Generally speaking, the Seventh Amendment does not extend the right to a jury trial to cases in admiralty. *See Waring*, 46 U.S. at 460. Yet, "[w]hile [the Supreme] Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress, or Rule of Procedure, civil or admiralty, forbid jury trials in maritime cases." *Fitzgerald,* 374 U.S. at 20. Under Supreme Court precedent, moreover, the Seventh Amendment right to a trial by jury may apply in admiralty cases tried at law by way of the savings-to-suitors clause. In *Ellerman Lines*, Leighton Beard, a longshoreman employed by Atlantic and Gulf Stevedores ("Atlantic"), suffered injuries while unloading bales of burlap from a vessel owned by Ellerman Lines, Ltd. ("Ellerman"), who had hired Atlantic to perform stevedoring services. 369 U.S. at 359-60. Beard sued Ellerman in United States District Court for the Eastern District of Pennsylvania based on diversity jurisdiction, alleging unseaworthiness of the vessel and negligence. Beard designated the action as one at law and demanded a jury trial. Ellerman, in

29

turn, impleaded Atlantic as Beard's employer, alleging negligence based on its "manner and method of unloading" and seeking indemnification in the event it were held liable to Beard. Based on the jury's answers to special interrogatories, the district court entered judgment in favor of Beard against Ellerman and in favor of Atlantic on Ellerman's indemnity claim. The United States Court of Appeals for the Third Circuit affirmed the judgment in favor of Beard but reversed the judgment in favor of Atlantic. Finding a violation of the Seventh Amendment's prohibition against the reexamination of facts by a court,[7] the Supreme Court reversed, reasoning that "neither we nor the Court of Appeals can redetermine facts found by the jury any more than the District Court can predetermine them." *Id.* at 358-59. The Supreme Court began its analysis by noting the application of the Seventh Amendment to that case: "[t]he requirements of the Seventh Amendment were brought into play in this case, even though a stevedoring contract is a maritime contract." *Id.* at 359. Of particular relevance here, the Supreme Court explained that "[t]his suit being in the federal courts by reason of diversity of citizenship carried with it, of course, the right to trial by jury." *Id.* at 360.

*Ellerman Lines* affirms the principle that the Seventh Amendment may apply to admiralty cases tried at law by way of the savings-to-suitors clause. *See Lockheed Martin*, 503 F.3d at 356 ("In our view, *Ellerman* makes it clear that the

_____

[7] The Seventh Amendment provides, in pertinent part, that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of common law." U.S. Const. amend. VII.

Seventh Amendment applies to admiralty claims that are tried 'at law' by way of the saving-to-suitors clause."); *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997) ("The difference between [proceeding in admiralty or at law in state or federal court] is mostly procedural; of greatest significance is that there is no right to jury trial if general admiralty jurisdiction is invoked, while it is preserved for claims based in diversity or brought in state court."); *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1041 (8th Cir. 1983) ("An admiralty claim that is also cognizable as a civil claim, however, may be brought as an ordinary civil action. In these cases, the right to trial by jury attaches."); *In the Matter of Complaint of McAllister Towing of Va., Inc.*, 999 F. Supp. 797, 799 (E.D. Va. 1998) ("One of the remedies saved to suitors is the right to a trial by jury.").

*Ellerman Lines*, therefore, belies St. Paul's argument that the Seventh Amendment does not apply to admiralty cases. As the Fourth Circuit in *Lockheed Martin* put it, such a contention is an "oversimplification:" "[w]hile the Seventh Amendment is not applicable to an admiralty *claim*, it can be applicable to certain claims – those over which the 'law' court has concurrent jurisdiction." *Lockheed Martin*, 503 F.3d at 359. In addition, the Supreme Court has even endorsed allowing traditional non-jury admiralty claims to be tried by a jury. *See Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 21 (1963) (holding "that a maintenance and cure

31

claim joined with a Jones Act claim [that, by statute, carries the right to a jury trial] must be submitted to the jury when both arise out of one set of facts").

Assuming the presence of diversity jurisdiction,[8] the Seventh Amendment may apply to Lago's counterclaim for breach of the maritime insurance contract. *See Ellerman Lines*, 369 U.S. at 359-60 (providing that "a suit for breach of a maritime contract, while it may be brought in admiralty, may also be pursued in an ordinary civil action, since . . . it is a suit in personam") (footnote and internal citation omitted).

Although St. Paul elected to proceed in admiralty, rather than at law, I do not believe that a plaintiff's election to proceed in admiralty pursuant to Rule 9(h) *in a declaratory judgment action* trumps the Seventh Amendment's guarantee of the right to a trial by jury where it would otherwise apply. Rather, the Supreme Court instructs that a declaratory judgment action cannot defeat the Seventh Amendment's guarantee to a jury trial on a "legal" counterclaim because the counterclaim represents the real controversy.

In *Beacon Theaters*, the Supreme Court addressed the right to a jury trial when a claim for declaratory relief is a part of the equation. After Beacon Theaters, Inc. ("Beacon") notified Fox West Coast Theaters ("Fox") that it believed Fox had violated federal antitrust laws, Fox filed a declaratory judgment

_____

[8] Lago pled diversity jurisdiction in its counterclaim.

32

action, seeking a declaration that it had not violated the Sherman Antitrust Act.

Beacon filed a counterclaim, alleging antitrust violations and seeking treble

damages. Beacon also demanded a jury trial. The district court viewed Fox's

claims as equitable and ordered that its claims be tried in a bench trial before a jury

considered Beacon's counterclaim. Unsatisfied with that decision, Beacon sought

a writ of mandamus from the United States Court of Appeals for the Ninth Circuit.

The Ninth Circuit refused to issue the writ and Beacon appealed to the Supreme

Court. The Supreme Court issued the writ, reasoning that the declaratory judgment

statute

> while allowing prospective defendants to sue to establish their nonliability, specifically preserves the right to jury trial for both parties. It follows that if Beacon would have been entitled to a jury trial in a treble damage suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first. Since the right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade, the Sherman and Clayton Act issues on which Fox sought a declaration were essentially jury questions.

*Beacon Theatres*, 359 U.S. at 504 (footnote and internal citation omitted). In other

words, the right to a jury trial in a declaratory judgment action depends on whether

there would have been a right to a jury trial had the action proceeded without the

declaratory judgment vehicle. *See also Gulfstream Aerospace Corp. v.*

33

*Mayacamas Corp.*, 485 U.S. 271, 284 (1988) ("Actions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy.").

St. Paul argues that *Beacon Theaters* does not apply here for two reasons: (1) it did not address the "interplay" of an admiralty claim and the Seventh Amendment, and (2) the Supreme Court decided it before the unification of civil and admiralty procedure in 1966. I find both reasons unavailing. Like *Beacon Theaters*, this case involves a "legal" claim (Lago's breach of contract) to which the Seventh Amendment applies just as the Seventh Amendment applied to Beacon's claim for treble damages under the Sherman Act. In addition, the Ninth Circuit found *Beacon Theaters* applicable in a similar scenario, holding that a plaintiff's election to proceed in admiralty does not deprive another party of a jury trial on a properly joined claim. *See Wilmington Trust v. United States District Court for the District of Hawaii*, 934 F.2d 1026, 1032 (9th Cir. 1991); *see id.* at 1031 (noting that the Supreme Court in *Beacon Theaters* "held that the right to a jury trial as provided by the seventh amendment overcomes another party's preference for a bench trial when those interests conflict").[9] Second, as to St.

---

[9] Other courts have also applied the reasoning of *Beacon Theaters* to address the right to a jury trial in an admiralty case. *See The Continental Ins. Co. v. Indus. Terminal & Salvage Co.*, No. 05CV1142, 2005 WL 2647950, at *1-2 (W.D. Pa. Oct. 17, 2005) (relying on *Beacon Theaters* and denying insurer's motion to strike insured's jury trial demand in a declaratory judgment action under admiralty jurisdiction); *Canal Barge Co. v. Commonwealth Edison Co.*,

Paul's unification argument, "[t]he merger of civil and admiralty procedure in 1966 . . . made no change in the complicated pattern of when a right to jury trial exists." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2315 (2008).

As this Circuit has noted, in the context of a declaratory judgment action, "the normal position of the parties is reversed." *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992); *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008). In that sense, Lago is the real plaintiff-in-interest and St. Paul is the real defendant-in-interest. Moreover, our precedent teaches that the complaint for declaratory relief does not control the case, at least for purposes of determining the presence of a federal question. In *Hudson*, we looked not to the face of the complaint but to the cause of action anticipated by the declaratory judgment plaintiff: "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Hudson Ins.*, 957 F.2d at 828

No. 98 C 0509, 2002 WL 206054, at * (N.D. Ill. Feb. 11, 2002) (finding *Beacon Theaters* "persuasive" and noting that "[t]he same reasoning [employed in *Beacon Theaters*] applies when parties join non-admiralty claims to which a right to a jury trial attaches with admiralty claims"); *Sphere Drake Ins. PLC v. J. Shree Corp.*, 184 F.R.D. 258, 261 (S.D.N.Y. 1999) (finding *Beacon Theaters* "persuasive and compelling" and denying an insurer's motion to strike insured's jury trial demand in a declaratory judgment action under admiralty jurisdiction).

(quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248 (1952)); *see also Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008) (providing that the inquiry into the presence of a federal question turns on "whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court. To do this, we must analyze the assumed coercive action by the declaratory judgment defendant"). Likewise here, Lago's counterclaim for breach of contract represents the actual matter in controversy. We even acknowledge as much in the majority opinion, referring to Lago's counterclaim for breach of contract as the "flip side" of St. Paul's declaratory judgment complaint. Majority Op. at 6. Consequently, the fact that Lago filed a counterclaim to protect its right to a jury trial is essentially irrelevant. *See Lockheed Martin*, 503 F.3d at 358.

In *Beacon Theaters*, a defendant's right to a jury trial on a "legal" counterclaim was upheld, even though the plaintiff sought declaratory relief in equity, traditionally a non-jury case. Similarly here, Lago should be entitled to a jury trial on its "legal" counterclaim for breach of contract even though St. Paul sought declaratory judgment and invoked admiralty jurisdiction, again, traditionally a non-jury case. Given the nature of a declaratory judgment action as a reversed lawsuit, Lago should not be deprived of the right to a jury trial because St. Paul "took advantage of the availability of declaratory relief to sue [Lago]

36

first." *Beacon Theaters*, 359 U.S. at 504.

Taking into consideration the savings-to-suitors clause and the nature of a declaratory judgment action Lago is entitled to a jury trial in this case. First, by way of the savings-to-suitors clause, the Seventh Amendment may apply to claims triable at law, such as Lago's breach of contract counterclaim. Second, *Beacon Theatres* instructs us to consider how the cause of action would have proceeded in the absence of the declaratory judgment vehicle. Therefore, Lago would have been entitled to designate his breach of contract counterclaim as "legal," affording Lago the protection of the Seventh Amendment and the right to a trial by jury.

"Trial by jury is a vital and cherished right, integral in our judicial system." *City of Morgantown, W. Va. v. Royal Ins. Co.*, 337 U.S. 254, 258 (1949). Thomas Jefferson described "trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its Constitution." 3 The Writings of Thomas Jefferson 71 (Washington Ed. 1861). Under our current precedent, the guarantee of this "vital and cherished right" in an admiralty case where a counterclaim may be tried "at law" hinges on whether the insurer files a declaratory judgment action before the insured files his or her claim for breach of contract. The "anchor" in our Constitution demands more exacting scrutiny than a race to the courthouse doors.